UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHAD BLUNT,

                Plaintiff

    v.

INTERSTATE HOTELS, LLC

                Defendant,

Civil Action No.
10-cv-11755-JLT

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

1.    This is a civil action brought by Plaintiff Chad Blunt ("Blunt" or "Plaintiff") against Interstate Hotels, LLC ("Interstate" or "Defendant") for failure to provide a reasonable accommodation or engage in an interactive process for the Plaintiff's handicap, in violation of M.G.L. c. 151B; unlawful discrimination because of handicap, in violation of M.G.L. c. 151B; retaliatory discharge because of requests for reasonable accommodations, in violation of M.G.L. c. 151B; non-payment of wages, in violation of M.G.L. c. 149, §§ 148 and 150; breach of implied contract; detrimental reliance; and wrongful discharge in violation of public policy.[1]

## JURISDICTION AND VENUE

2.    Jurisdiction lies in Superior Court pursuant to M.G.L. c. 212, § 3.

---

[1] Defendant Interstate has assented to the filing of this amended complaint. See Fed. R. Civ. P. 15(a)(2).

3. Venue in Suffolk County is proper because the Plaintiff resides in Suffolk County.

## PARTIES

4. Plaintiff Chad Blunt ("Blunt" or "Plaintiff") is an individual residing in Boston, Suffolk County, Massachusetts.

5. Defendant Interstate Hotels, LLC ("Interstate" or "Defendant"), which also does business as Interstate Hotels and Resorts, is a Delaware company with its place of business in Virginia, and conducting business within Massachusetts.

6. At all relevant times, Interstate provided management services for The Charles Hotel, including but not limited to human resources services. Interstate was responsible for Blunt's hiring, discipline, and discharge, as well as setting his terms and conditions of employment.

## EXHAUSTION

7. On or around April 10, 2010, Blunt filed a Complaint of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") alleging unlawful discrimination and retaliation because of handicap.

8. Blunt may file a private cause of action alleging unlawful discrimination and retaliation because of handicap by the Defendant pursuant to M.G.L. c. 151B, § 9, because more than ninety days have passed since he filed a Complaint of Discrimination with the MCAD.

9. On or around April 10, 2010, Blunt filed a Non-Payment of Wage and Workplace Complaint Form with the Massachusetts Office of the Attorney General alleging non-payment of wages by the Defendant.

10. By letter dated June 28, 2010, the Office of the Attorney General informed Plaintiff that he could file a private cause of action under M.G.L. c. 149, § 150 and M.G.L. c. 151, §§ 1B and 20.

## FACTUAL ALLEGATIONS

A. <u>The Defendant's Failure to Accommodate Blunt's Disability</u>

11. Blunt was employed as a bartender at The Charles Hotel by the Defendant from October 2008 until October 2009.

12. Blunt was diagnosed with Type I Diabetes before he began working for the Defendant. This diagnosis was known at all relevant times by the Defendant.

13. Blunt's Type I Diabetes requires him to engage in a daily regimen of insulin therapy to manage his blood glucose levels.

14. As an accommodation for his disability, Blunt requested that he be provided with 30-minute unpaid meal breaks. Such meal breaks would provide Blunt with the time necessary to test his blood glucose level and take insulin.

15. The Defendant consistently refused to provide Blunt with 30-minute unpaid meal breaks.

16. The Defendant was required to provide such breaks pursuant to M.G.L. c. 149, § 100.

17. Blunt routinely complained to the Defendant about the denial of the 30-minute unpaid meal breaks.

18. The Defendant made no attempt to find a different means to accommodate Blunt's diabetes.

B. <u>The Defendant's Unpaid Meal Break Policy</u>

19. The Defendant had a written policy that guaranteed employees a 30-minute unpaid meal break if they were scheduled for more than six hours of work per day.

20. Both Blunt and his manager signed the Defendant's written policy.

21. Blunt reasonably believed that the Defendant would adhere to the guarantee in its written policy that he would be provided with a 30-minute unpaid meal break when he was scheduled for more than six hours of work per day.

22. Blunt relied on the Defendant's guarantee that he would be provided with 30-minute unpaid meal breaks when he decided to work for the Defendant.

23. The Defendant frequently did not provide Blunt with 30-minute unpaid breaks when he was scheduled to work more than six hours per day.

C. The Defendant's Failure to Pay Blunt Wages for All Work Performed

24. During Blunt's employment, the Defendant tracked employees' working time with a biometric time clock.

25. The only compensation paid by the Defendant to Blunt was for time recorded by the Defendant's biometric time clock system.

26. The Defendant maintained and enforced a policy that did not allow Blunt to clock in more than five minutes prior to the start of his scheduled shifts.

27. Notwithstanding the allegation of ¶ 26, supra, Blunt often reported to work 45 to 90 minutes prior to the posted start of his shift.  During this period, he would engage in set-up work at the bar, among other duties.

28. The policy disallowing employees from clocking in more than five minutes prior to the start of the shift was maintained and enforced even when Blunt performed the work described in ¶ 27, supra.

29. Blunt's weekly hours, when his work prior to his shift was combined with his work during his shift, were often in excess of forty hours per week.

30. The Defendant knew that Blunt worked extra time prior to his shift and never asked him to cease doing that work.

31. Managers and/or supervisors of the Defendant would often assign Blunt work to perform during this period before he was allowed to clock in.

32. The Defendant promised Blunt that he would be paid at his regular hourly rate, ten dollars per hour, for all work performed in the first forty hours worked per week.

33. The Defendant promised Blunt that he would be paid one and a half times his regular hourly rate for all work performed in excess of forty hours per week, regardless of the requirements of state and/or federal law.

34. Blunt did not receive any compensation for his work prior to the posted start of his shift.

   D. The Defendant's Discriminatory and Retaliatory Discharge of Blunt

35. The Defendant terminated Blunt's employment as a bartender on October 1, 2009 as a result of his diabetes and in retaliation for his repeated requests for accommodation of his diabetes.

36. When Blunt was fired, a representative of the Defendant told Blunt the Defendant would not contest his collection of unemployment benefits on the condition that he sign a form that stated he was resigning from his job.

37. The Defendant warned Blunt that it was in his best interest to sign the resignation form, because he needed unemployment benefits to cover the cost of buying medicine to treat his diabetes.

38. Blunt did not voluntarily resign from his job, but rather was fired by the Defendant.

39. It was the Defendant's intention to fire Blunt if he did not sign the resignation form.

40. The Defendant banned Blunt from its property when he was fired, whereas the Defendant has not banned other terminated employees.

## COUNT 1

(M.G.L. c. 151B – Handicap Discrimination)

41. Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 40 above.

42. At all relevant times, Plaintiff was an "employee" as defined by M.G.L. c.151B, § 1(6).

43. At all relevant times, the Defendant was an "employer" as defined by M.G.L. c. 151B, § 1(5).

44. Blunt's Type I Diabetes is a "handicap" as defined by M.G.L. c. 151B, § 1(17).

45. Blunt was a qualified handicapped person under M.G.L. c.151B, § 4(16) at all relevant times. Blunt would have been capable of performing the essential functions of his former position as bartender if he had been provided with reasonable accommodations for his handicap.

46. The Defendant repeatedly refused to accommodate Blunt's handicap by allowing him to take unpaid meal breaks.

47. The provision of an unpaid meal break, as required by statute, is a reasonable accommodation of Blunt's handicap

48. The Defendant did not attempt find any alternative reasonable means to accommodate Blunt's handicap.

49. The Defendant refused to provide Blunt with a reasonable accommodation for his handicap, in violation of M.G.L. c. 151B, § 4(16).

50. The Defendant refused to engage in an interactive process with Blunt in order to find a reasonable accommodation for his handicap, in violation of M.G.L. c. 151B, § 4(16).

## COUNT 2

(M.G.L. c. 151B – Handicap Discrimination)

51. Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 50 above.

52. On or about October 1, 2009, Blunt was terminated because of his handicap, Type I Diabetes, in violation of M.G.L. c. 151B, § 4(16).

53. The Defendant engaged in unlawful discrimination by banning Blunt from the premises as a result of his handicap, in violation of M.G.L. c. 151B, § 4(16).

## COUNT 3

(M.G.L. c. 151B – Retaliation)

54. Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 53 above.

55. On or about October 1, 2009, Blunt was terminated in retaliation for his numerous requests for a reasonable accommodation of his handicap and complaints when a reasonable accommodation was not provided.

56. The Defendant engaged in unlawful discrimination by firing Blunt in retaliation for his requests for a reasonable accommodation of his handicap and complaints when a reasonable accommodation was not provided, in violation of M.G.L. c. 151B, § 4(16).

57. The Defendant engaged in unlawful discrimination by banning Blunt from the premises in retaliation for his requests for a reasonable accommodation of his handicap and complaints when a reasonable accommodation was not provided, in violation of M.G.L. c. 151B, § 4(16).

## COUNT 4

(Breach of Implied Contract)

58. Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 57 above.

59. The Defendant's written policy guaranteeing employees the right to 30-minute meal breaks when they worked more than six hours per day created an implied contract between Blunt and the Defendant.

60. Blunt and the Defendant evidenced their agreement to this contract by signing it and having a supervisor sign it, respectively.

61. Blunt gave consideration for this contract by performing bartending services for the Defendant.

62. Blunt suffered damages when the Defendant breached this contract by failing to provide him with unpaid thirty-minute breaks when he worked more than six hours per day.

## COUNT 5

(Detrimental Reliance)

63. Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 62 above.

64. Blunt reasonably relied on the Defendant's guarantees in its written policies that employees had the right to 30-minute meal breaks when they worked for more than six hours per day.

65. Blunt's reliance on these guarantees was to his detriment because he did not receive 30-minute meal breaks.

66. Blunt suffered damages because of the Defendant's failure to provide him with 30-minute meal breaks.

## COUNT 6

(Wrongful Discharge in Violation of Public Policy)

67. Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 66 above.

68. Employees have a legally guaranteed right under M.G.L. c. 149, § 100 to be provided with a 30-minute meal break after six hours of work.

69. This statutory right represents a Massachusetts public policy in favor of providing employees with periodic breaks during their work time.

70. The Defendant consistently refused to provide Blunt with unpaid meal breaks, despite being required to do so under M.G.L. c. 149, § 100.

71. The Defendant discharged Blunt because he attempted to exercise his lawful right to rest by requesting unpaid meal breaks and complaining about not being provided unpaid meal breaks.

72. The Defendant's discharge of Blunt was in violation of the public policy embodied in M.G.L. c. 149, § 100.

73. Blunt suffered damages because of the Defendant's wrongful discharge in violation of public policy.

## COUNT 7

(M.G.L. c. 149, §§ 148 and 150 – Failure to Pay Wages)

74. Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 73 above.

75. At all relevant times, Blunt was as an "employee" covered by M.G.L. c. 149, §§ 148 and 150.

76. At all relevant times, the Defendant was a "person having employees in [its] service," under M.G.L. c. 149, § 148.

77. Blunt never received any compensation for his work prior to the start of his shift, despite the Defendant's promise to pay him at his regular hourly rate for all

work performed and one and a half times his regular hourly rate for all work performed in excess of 40 hours per week.

78. The Defendant's failure to pay Blunt his earned wages in a timely manner constitutes a violation of M.G.L. c. 149, §§ 148 and 150.

## COUNT 8

(29 U.S.C. §§ 201, *et seq.* – Failure to Pay Overtime)

79. Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 78 above.

80. At all relevant times, Blunt was as an "employee," as defined in 29 U.S.C. § 203(e).

81. At all relevant times, the Defendant was an "employer," as defined in 29 U.S.C. § 203(d).

82. At all relevant times, the Defendant was an "enterprise engaged in commerce or in the production of goods for commerce," as defined in 29 U.S.C. § 203(s).

83. Blunt did not receive compensation for his work prior to the start of his shift. As a result, the Defendant routinely failed to pay Blunt one and one-half times his regular rate of pay for hours worked in excess of 40 per week.

84. The Defendant's failure to pay Blunt one and one-half times his regular rate of pay for hours worked in excess of 40 per week constitutes a violation of 29 U.S.C. § 207.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for this Court:

(1) to enter judgment for the Plaintiff for damages resulting from the Defendant's failure to reasonably accommodate the Plaintiff's handicap or engage in an interactive process in order to reasonably accommodate the Plaintiff's handicap;

(2) to enter judgment for the Plaintiff for damages resulting from the Defendant's unlawful discriminatory discharge of the Plaintiff on the basis of his handicap;

(3) to enter judgment for the Plaintiff for damages resulting from the Defendant's discharge of the Plaintiff in retaliation for his requests for accommodation;

(4) to enter judgment for the Plaintiff for damages resulting from the Defendant's breach of its implied contract with the Plaintiff;

(5) to enter judgment for the Plaintiff for damages resulting from detrimental reliance;

(6) to enter judgment for the Plaintiff for damages resulting from the Defendant's discharge of the Plaintiff in violation of public policy;

(7) to enter judgment for the Plaintiff for damages resulting from the Defendant's failure to pay wages due for his work prior to his shifts;

(8) to enter judgment for the Plaintiff for mandatory treble damages on all unpaid wages, pursuant to M.G.L. c. 149, § 150;

(9) to enter judgment for the Plaintiff for damages resulting from the Defendant's failure to pay him one and one-half times his regular rate of pay for hours worked in excess of 40 per week;

(10) to award costs and reasonable attorneys' fees;

(11) to award interest on all damages recovered;

(12) to award such further legal and equitable relief as this Court may deem fitting and just.

## JURY CLAIM

The Plaintiff hereby claims a jury trial.

> Respectfully submitted,
>
> CHAD BLUNT
>
> By his attorneys,
>
> /s/ James A.W. Shaw
> Michael J. Doheny, Esq., BBO# 644476
> James A.W. Shaw, Esq., BBO# 670993
> SEGAL ROITMAN, LLP
> 111 Devonshire St., 5th Floor
> Boston, MA 02109
> Phone: (617) 742-0208
> Fax: (617) 742-2187
> E-mail: jshaw@segalroitman.com

Dated November 17, 2010

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 17, 2010.

> /s/ James A.W. Shaw